## Stepp v. Stepp.

### (Decided December 11, 1917.)

### Appeal from Pike Circuit Court.

1. Divorce—Appellate Jurisdiction.—This court has no jurisdiction to reverse a judgment for divorce, but it may look into the testimony upon which the divorce was granted in order to determine the correctness of the judgment for alimony or whether any such judgment should have been rendered.

2. Divorce—Grounds—Cruel and Inhuman Treatment.—Cruel and inhuman treatment on the part of the husband furnishing grounds for a divorce by the wife is a relative term, since conduct which might create it in one case would not in another, and where the wife is so diseased and afflicted as to render her nervous and irritable, with a partial loss of mentality, her conduct should not be given the force and effect to charge her with being guilty of "like conduct" as to deprive her of the right to obtain a divorce upon like grounds on the part of her husband, the evidence being sufficient to show his guilt.

3. Divorce—Alimony—Discretion of Court.—The amount of alimony to be allowed the wife is a question for the sound discretion of the court, and in exercising it he cannot be influenced by the sufficiency of alimony to support the wife, but must be governed by the amount of property owned by the husband and his ability to pay, his circumstances and conditions considered.

CHILDERS & CHILDERS for appellant.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a divorce suit brought by appellee, plaintiff below, against the appellant, defendant below, in the Pike circuit court, whereby plaintiff sought a divorce

upon the ground that her husband had habitually be-
haved toward her for not less than six months in such a
cruel and inhuman manner as to indicate a settled aver-
sion to her and to destroy permanently her peace and
happiness. She sought alimony in the sum of $5,000.00,
and also the custody of their four infant children rang-
ing in age from ten to two years, the two older being
girls and the two younger being boys.

The answer was a denial, and in another paragraph
attempted to rely on articles of separation which were
executed by the parties about the time or just after they
separated.

The reply questioned the validity of the separation
agreement, upon the ground that it had been procured
by fraud and that defendant had failed and refused to
comply with it.

Before judgment, and after the expiration of one
year from the separation, the defendant amended his
answer and made it a counterclaim against plaintiff,
seeking a divorce from her upon the ground of one
year's abandonment of him. The counterpleading to
this amendment justified the abandonment, and upon
final submission the court granted the plaintiff a di-
vorce, giving to her $1,000.00 alimony, but let the hus-
band retain the custody of the children. He also allowed
plaintiff's attorneys $100.00 to be taxed as cost against
the defendant.

To reverse the judgment allowing alimony, this ap-
peal is prosecuted by the defendant.

The law is well settled, and indeed is of statutory
enactment, that there can be no appeal from a judgment
granting an absolute divorce, but the rule is firmly fixed
in this jurisdiction that although the judgment for di-
vorce may not be disturbed on appeal, still this court
may look into the evidence to see whether the judgment
was authorized under the proof, and if found not to be
authorized the judgment for alimony may be reversed.
There are many cases to this effect, the latest being
Burns v. Burns, 173 Ky. 105, and Griffin v. Griffin,
idem. 636.

It would be of no service to any one to give a de-
tailed statement of the evidence in this case, and we will
therefore refer to it only in a general way. The parties
were married in 1903, and we judge that they had resided
upon a farm, as they were doing at the time of the sepa-
ration. The case has not been thoroughly prepared, and

many matters which might throw light upon the rights of the parties are entirely lacking. There is enough in the record, however, to show that plaintiff a year or more before the separation sustained a paralytic stroke, partially paralyzing her entire left side and affecting, at least to some extent, her mind. She was and had been for some time before the separation afflicted with tuberculosis, it appearing that she would occasionally suffer a hemorrhage of the lungs. These afflictions, with the work she had to do as housekeeper and looking after her children, rendered her very nervous and excitable, and necessarily caused her to say and do perhaps many things which she would have refrained from doing in her normal condition. We, therefore, find her, while so afflicted, breathing threats against her husband and applying to him inelegant names, but all this appears to have occurred only when the two would get into a controversy which the evidence does not show to have been superinduced by the plaintiff.

Her husband failed to provide her with a physician, or, so far as the record discloses, any assistance except that he would on occasions do the milking. The record is silent as to whether he or anyone else assisted plaintiff in performing any of the other household duties. She appears to have been industrious, and would gather together small quantities of marketing, such as eggs, butter and chickens, with which she would clothe herself and children and dividing a part of the proceeds with the husband upon his demand. There is also proof in the case that at least one time the husband struck his wife with his fist, she testifying to this fact, and a witness for her stating that the defendant exhibited to the witness his swollen hand, saying that it was made so by striking his wife.

The grounds for divorce relied upon here, as will be seen from the Kentucky Statutes, section 2117, are not available to the wife where she is guilty of like fault. If it had appeared from the record that the plaintiff was sound in both body and mind, it is doubtful whether she would have been entitled to a divorce, since her conduct would convict her of "like fault." But when we take into consideration her afflictions, and the known effects which they are certain to produce upon the one so afflicted, we are convinced that the defendant failed to exhibit that degree of patience, tenderness and filial affection which was due from him as husband, and which

would have relieved him of the charge of cruel behavior
toward his wife. Her afflictions so mollified her conduct
as to justify the court in throwing the mantle of charity
around her and to relieve her of the consequences of her
transgressions.

Conduct included in the phrase "cruel and inhuman
behavior" is relative in its application. What might be
cruel and inhuman behavior in one case might not be in
another. It is dependent upon conditions. Conduct
toward an infant might be extremely cruel and inhuman
when it would be perfectly defensible if exercised toward
a responsible person, and so as to the conduct of a hus-
band toward his wife. If from affliction or other cause
not her fault she is induced to do things which she would
not otherwise do, it would be the duty of the husband to
govern himself accordingly, and to exercise a spirit of
forbearance and patience commensurate with his wife's
afflictions. This was not done by the defendant in this
case, and we are, therefore, disinclined to permit her
seeming exhibitions of temper to relieve the husband of
the consequences of his behavior toward her. This being
true, the court was authorized to enter the judgment of
divorce.

The judgment appealed from allowing the wife
$1,000.00 alimony presents a greater difficulty. The hus-
band is not shown to own any personal property. We
surmise, however, that he must possess at least a meager
amount of household goods and perhaps some farming
implements. He has an estate for his life in a tract of
land containing between three hundred and four hundred
acres, the fee simple title to which, under the proof, is
worth $50.00 per acre. But this value consists chiefly
in the minerals under the land and in the timber upon it.
The husband, of course, can not realize from either of
those sources since he would be guilty of waste if he
should attempt to do so. There are only between fifteen
and twenty acres of cleared and tillable land in the tract,
and the proof by only one witness is to the effect that the
rentable value of the cleared land would not exceed
$150.00 per year.

As the record appears, the husband will be compelled
to provide for his four infant children. It is not shown
that he has any money or other property to aid or assist
him in paying the alimony judgment, and if he should be
compelled to realize that sum from the cultivation of the
land it would appear to be almost a physical impossi-

bility, not taking into account his obligation to support his children.

As to what is a proper allowance of alimony in a given case, is a question which addresses itself to the sound discretion of the court, which discretion is always exercised in the light of the facts. Courts cannot apportion to the parties a competency for each of them, since all they can do is to make an equitable division of what they have on hand. If that is a small amount, the distribution between the two will necessarily be small. It is only the *pro rata* that each one may have of the property to be divided that the courts are called upon to adjust. Burns v. Burns, and Griffin v. Griffin, *supra,* and cases therein cited.

Looking at the facts of this case from the standpoint of what has been said, we think the lump sum of $1,000.00 alimony was too much, since a sound judicial discretion would be better exercised if the court would allow the plaintiff an annual sum to be paid quarterly until the further orders of the court, the case being kept upon the docket for that purpose. If facts develop changing the conditions of the parties so as to justify it, the court may at any time, upon notice, alter the annual allowance by increasing or diminishing it according to the changed conditions. In this case, if we were confined strictly to the proof found in the record, we would scarcely be justified in making an annual allowance exceeding the sum of $50.00 (it being one-third of the proven rental value of the land), but we are not inclined to be governed entirely by what the proof shows to be the rental value of the tillable land belonging to the husband. With an earnest, diligent effort he surely could take care of his children and pay his unfortunate wife as much as $100.00 per year to be paid quarterly at such times as the court may direct after the return of the case and we are convinced this should have been the judgment of the court.

There is no appeal from the judgment granting the custody of the children to the defendant, nor from that part of the judgment fixing the allowance to plaintiff's attorneys.

Wherefore, the judgment allowing $1,000.00 alimony is reversed, with directions to enter a judgment in accordance herewith, and to retain the case on the docket for future orders as herein directed.